JEFFREY A. DRACUP (CSB No. 110516)
jeff.dracup@dracupandpatterson.com
**DRACUP & PATTERSON, INC.**
270 N. El Camino Real, Suite 510
Encinitas, California 92024-2874
Telephone: (949) 309-1535

CODY R. LEJEUNE (CSB No. 249242)
cody@lejeunelawfirm.com
**LEJEUNE LAW, P.C.**
2801 Camino Del Rio South, Suite 200A
San Diego, CA 92108
Telephone: (985) 713-4964

Attorneys for Plaintiffs,
JADE LIN, an individual; JAY LI, an individual; MINH
HONG, an individual; et al.,

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JADE LIN, an individual; JAY LI, an individual; MINH HONG, an individual; et al.,<br><br>*Plaintiff*,<br><br>v.<br><br>SUAVEI, INC., a Delaware corporation; AFONSO INFANTE, an individual; ALLISON WONG, an individual; and DOES 1-10, inclusive,<br><br>*Defendants*. | CASE NO.: '20 CV 0862 L    AHG<br><br>**COMPLAINT FOR DAMAGES FOR: (1) FRAUDULENT INDUCEMENT; (2) FRAUDULENT CONCEALMENT; (3) BREACH OF FIDUCIARY DUTY; (4) BREACH OF DUTY OF LOYALTY; and (5) NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jade Lin ("Lin"), Jay Li ("Li"), Minh Hong ("Hong"), Patchen Uchiyama ("Uchiyama"), Elizabeth Daly-DeJoy ("Daly-DeJoy"), Sanh Hong ("S. Hong"), Bridget Amatore ("Amatore"), Dr. Richard Kurtz ("Kurtz"), Roderick Fermin ("Fermin"), Quin Nguyen ("Nguyen"), Piush Patel ("Patel"), Shyue Ping Ong ("Ping Ong")  (collectively, "Plaintiffs") now complains of Defendants Afonso Infante ("Infante"), Allison Wong ("Wong") (Wong and Infante, collectively, the "Individual Defendants"), and Suavei, Inc. ("Suavei"), (Suavei, together with the Individual Defendants, collectively, "Defendants") and alleges as follows:

## NATURE OF ACTION

1.    Plaintiffs are a group of individuals that collectively invested a total of $755,000 in Defendant Suavei.

2.    Defendants presented Plaintiffs with an investment opportunity in Defendant Suavei that was to be made via convertible notes.

3.    Defendants represented to Plaintiffs that the value of Suavei was very high and that this was a relatively low-risk investment based on defendants' repeated representations that the company product ("Suavei Product") was completed and already in the hands of initial customers as a working electronic data security device. Defendants informed Plaintiffs that the Suavei Product was fully scalable for any size application and that Suavei had a designed, tested, and deployed containerized microservices architecture. Plaintiffs invested $755,000 in Suavei with the assurances that it was a low-risk undertaking because the Suavei Product was an ***existing product*** that was ***unique*** in its market space.

4.    The truth was that the Suavei Product was not functioning as promised to before the investment was made, that it did not have a containerized microservices architecture, and was not capable of efficient and automated scaling.

5.    In addition, Defendants Infante and Wong (the only two Suavei Board Members) concealed that, at the time of the false and misleading representations to Plaintiffs, that neither of them worked full-time for Suavei and that none of the other Suavei

employees or contractors were working full-time.    The two individual Defendants also concealed the fact that they were married.

6.    Worse yet, both Individual Defendants concealed that, at the time of the false and misleading representations to Plaintiffs, they were both full-time employees of competing cybersecurity companies at least as far back as July 2019 and never revealed that they may have executed trade secret agreements that might preclude Suavei from ever truly marketing its cybersecurity product.

7.    If Plaintiffs had known the truth about the Suavei Product, the marriage relationship of the Individual Defendants, that they did not work full-time for Suavei, or that the Individual Defendants were both full-time employees of competing companies, Plaintiffs would not have invested in Suavei.

8.    Based on these facts, Plaintiffs bring this civil action for fraudulent inducement, fraudulent concealment, unjust enrichment, and breach of contract arising out of Defendants' fraudulent and unfair business practices and misrepresentations to Plaintiffs.

## **THE PARTIES**

9.    Plaintiff Jade Lin is an individual residing in Poway, California.

10.    Plaintiff Jay Li is an individual residing in San Diego, California

11.    Plaintiff Minh Hong is an individual residing in San Diego, California.

12.    Plaintiff Patchen Uchiyama is an individual residing in Chatsworth, California.

13.    Plaintiff Elizabeth Daly-DeJoy is an individual residing in Wofeboro, New Hampshire.

14.    Plaintiff Sanh Hong is an individual residing in San Francisco, California.

15.    Plaintiff Bridget Amatore is an individual residing in New York, New York.

16.    Plaintiff Dr. Richard Kurtz is an individual residing in Hercules, California.

17.    Plaintiff Roderick Fermin is an individual residing in Corona, California.

18.    Plaintiff Quin Nguyen is an individual residing in Mission Viejo, California.

2

1    19.    Plaintiff Piush Patel is an individual residing in Austin, Texas.

2    20.    Plaintiff Shyue Ping Ong is an individual residing in Palo Alto, California.

3    21.    Defendant Afonso Infante is an individual who, upon information and belief,

4    is residing in Las Vegas, Nevada. Infante is a co-founder and the Chief Technology Officer

5    ("CTO"), Chief Financial Officer ("CFO"), interim Chief Executive Officer ("CEO") of

6    Suavei and is one of the two members of the Board of Directors.

7    22.    Defendant Allison Wong is an individual who, upon information and belief,

8    is residing in Alameda, California. Wong is a co-founder and member of the Board of

9    Directors of Suavei.

10    23.    Defendant Suavei, Inc. is a Delaware corporation with purported offices at

11    5671 Mesa Mountain Dr., Las Vegas, Nevada 89135.

12    ## JURISDICTION AND VENUE

13    24.    This Court has original diversity jurisdiction over this action under 28 U.S.C.

14    § 1332 because the parties are completely diverse and the amount in controversy exceeds

15    $75,000.

16    25.    The Court has personal jurisdiction over Defendants because Defendants

17    regularly conduct business in California, and a substantial part of the events giving rise to

18    the claims asserted here occurred in California.

19    26.    Specifically, Defendants purposefully directed activities and consummated

20    transactions with Plaintiffs by entering into contracts and conducting business with

21    Plaintiffs, many of whom are southern California residents. By doing so, Defendants have

22    purposefully availed themselves of the privilege of conducting business in the forum state

23    of California, and specifically this District.

24    27.    On information and belief, Defendant Suavei regularly conducts business with

25    entities incorporated or located in California.

26    28.    Plaintiffs' causes of action for fraudulent inducement, fraudulent concealment

27    and breach of contract, pled herein, arose out of Defendants' activities with numerous

28    California residents in and around San Diego County, California.

29.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Defendants conduct numerous, significant business transactions within this District and because the majority of the wrongful conduct giving rise to this case occurred in, was directed to, or emanated from this District.

30.     In addition, venue is proper in this District under 28 U.S.C. § 1391(b)(3) because the Court has personal jurisdiction over Defendants.

## **GENERAL ALLEGATIONS**

### **Suavei's Business Model**

31.     Defendant Suavei, a self-proclaimed internet security company, was founded in 2016 by "cybersecurity veterans."[1] It claims to have deployed the only self-configuring threat management solution for wirelessly connected devices.[2]

32.     Suavei claims that its technology includes a SaaS-based architecture that uses machine learning algorithms to automate device identification and ongoing scans in different corporate, industrial, and remote environments.[3]

33.     Suavei also claims that its technology supports both internet-connected wireless devices, i.e. Internet of Things ("IoT") Cybersecurity Market, and the broader Vulnerability Management Market.[4]

34.     Specifically, Suavei advertises that its technology rapidly assesses, finds and mitigates vulnerabilities in Critical Network Infrastructure, including robust capabilities protecting wireless IoT devices, even in remote locations with slow internet connections.[5]

35.     Suavei claims that its security technology is fully automated, self-calibrating, and 100% SaaS, with custom integrations.

---

[1] https://www.linkedin.com/company/suavei-inc/, last retrieved on May 7, 2020.
[2] Ex. 1.
[3] Ex. 1.
[4] Ex. 1.
[5] https://www.suavei.com/about/, last retrieved on May 7, 2020.

COMPLAINT FOR DAMAGES FOR: (1) FRAUDULENT INDUCEMENT; (2) FRAUDULENT CONCEALMENT; (3) BREACH OF FIDUCIARY DUTY; (4) BREACH OF DUTY OF LOYALTY; and (5) NEGLIGENT MISREPRESENTATION

**Suavei's Misrepresentations**

36.     On or around April 30, 2019, Defendants made a presentation to Plaintiffs in an attempt to secure funding for Suavei.

37.     Defendants' misleading pitch to the investors consisted of an oral presentation emphasized in a slide deck, attached hereto as Exhibit 1.

38.     The April 2019 slide deck, titled, "Protecting the IoT with Intelligent Cybersecurity Threat Management," is subtitled, "Introduction and Capabilities" hereinafter referred to as the "Suavei Deck."

39.     Defendants used the Suavei Deck as bait to fraudulently lure Plaintiffs into investing in Suavei based on a host of material and intentional misrepresentations.

40.     First, Infante represented that, as of April 2019, the Suavei Product was designed, tested, and deployed. Defendants represented that the Suavei Product was capable of supporting WiFi devices, mobile devices, other IP-based devices, and other non-IP based devices (including Bluetooth, Zigbee, and Z-Wave) via the cloud through AWS, the Google Cloud Platform, and Microsoft Azure. *See* Suavei Deck, at p. 7.

41.     Specifically, Defendants misrepresented that the Suavei Product included a containerized microservice architecture that was designed, tested and ready to be deployed. *See* Suavei Deck, at p. 7.

42.     Defendants' misrepresentations regarding the capabilities of the Suavei Product are set forth in the slide below, taken from the Suavei Deck:



43.     From the April 2019 slide above, it is clear that Defendants represented that their technology consisted of a containerized microservices architecture.

44.     The importance of a product having a containerized microservices architecture *cannot be understated* because it means the product can scale to any number of client devices in an automated fashion. Falsely claiming that the product is already containerized severely misrepresents the product's scalability. It also obscures the fact that the product would require a costly and time-consuming redesign to truly scale up to large commercial enterprises. is scalable. When a product is scalable, it means that it is able to grow and work on a number of different platforms.

45.     For instance, Individual Defendant Wong, on July 10, 2018, issued a press release (the "July Press Release"), making the following statement[6]:

---

[6] See Exhibit 2, https://www.prweb.com/releases/2018/07/prweb15612628.htm

COMPLAINT FOR DAMAGES FOR: (1) FRAUDULENT INDUCEMENT; (2) FRAUDULENT CONCEALMENT; (3) BREACH OF FIDUCIARY DUTY; (4) BREACH OF DUTY OF LOYALTY; and (5) NEGLIGENT MISREPRESENTATION





Suavei is proud to be the first fully scalable, Enterprise-class Network Vulnerability Scanner available on AWS Marketplace in a SaaS Delivery Method

46.     Defendants understood the importance of the representation that the Suavei Product was scalable, and Defendants knew that Plaintiffs relied heavily upon that representation.

47.     Defendants' July Press Release continued, "Suavei is a fast, easy to use, intuitive interface that provides actionable insights and *a scalable architecture that will fit any topology*."

48.     Defendants Wong and Infante made these misrepresentations knowing their importance, their falsity and that the investors would rely upon the statements to make investments in Suavei.

## Plaintiffs' Investments

49.     Based on Defendants' misrepresentations, Plaintiffs invested a total of

$755,000 in Suavei in exchange for convertible promissory notes (the "Notes") summarized below. Each Plaintiff executed the Note Purchase Agreement ("Note Agreement"). The Notes and the Note Agreement are attached as Exhibits 3 and 4, respectively.

50.     Plaintiffs made the investments in Suavei based on the information disclosed by Defendants in April 2019, as well as the July Press Release announcing its deployment on AWS.

51.     A summary of each of the Plaintiffs' Notes are below:

     a.  Lin - $100,000 Note issued on May 24, 2019

     b.  Lin - $100,000 Note issued on October 30, 2019

     c.  Li - $100,000 Note issued on September 6, 2019

     d.  Li - $30,000 Note issued on October 30, 2019

     e.  Hong - $100,000 Note issued on May 24, 2019

     f.  Uchiyama - $75,000 Note issued on October 30, 2019

     g.  Patel - $25,000 Note issued on October 30, 2019

     h.  Nguyen - $25,000 Note issued on October 30, 2019

     i.  Kurtz - $25,000 Note issued on November 29, 2019

     j.  Fermin - $25,00 Note issued on May 24, 2019

     k.  S. Hong - $50,000 Note issued on October 30, 2019

     l.  Ping Ong - $25,000 Note issued on May 24, 2019

     m.  Amatore - $25,000 Note issued on May 24, 2019

     n.  Daly-DeJoy - $50,000 Note issued on October 30, 2019

### Defendants' Fraudulent Inducement is Revealed

52.     On February 25, 2020, Suavei held a conference call with Plaintiffs Li and Lin (the "Call"), wherein the following attendees participated:

- Afonso Infante – Suavei board member, CTO, CFO and interim CEO
- Jade Lin – Investor
- Jay Li – Investor

COMPLAINT FOR DAMAGES FOR: (1) FRAUDULENT INDUCEMENT; (2) FRAUDULENT CONCEALMENT; (3) BREACH OF FIDUCIARY DUTY; (4) BREACH OF DUTY OF LOYALTY; and (5) NEGLIGENT MISREPRESENTATION

1    • Ryan Rios – EvoNexus intern

2    53.    During the Call, Suavei's fraudulent scheme was revealed by Defendants

3 Infante and Suavei and uncovered by Plaintiffs.

4    54.    For instance, Defendants revealed that Suavei did not renew former CEO

5 Frank DeJoy's contract. DeJoy came to Suavei with a proven track record of success, which

6 included launching a global artificial intelligence startup and growing the first AT&T

7 wireless data network to $1 billion. In addition, DeJoy was involved with successful

8 companies such as the Teleport Communications Group, General Dynamics, Dycom

9 Industries, Quanta Services and Spectrum Effect. Thus, in addition to losing a successful

10 CEO, Infante was now serving as both the acting CEO, CFO, CTO, President and

11 represented half of the Board of Directors.

12    55.    Upon DeJoy's departure as Suavei's CEO, Infante made the decision that

13 Suavei would no longer participate in the EvoNexus startup incubator program, which

14 helps startups in numerous ways, including but not limited to, two (2) years of free prime

15 real estate in La Jolla, California, intellectual property support, fundraising support, and

16 connects startups to its network of investors that include Franklin Templeton and Royal

17 Bank of Canada. In early, 2019, DeJoy helped Suavei secure a spot in the EvoNexus startup

18 incubator program for a 24-month term.

19    56.    As part of its program, EvoNexus required the physical presence of a founder

20 or CEO and other staff to comprise a team of two at any of their locations throughout

21 California, including San Mateo, Irvine, and San Diego. With the departure of DeJoy,

22 Defendant Infante – as interim CEO – refused to participate in the EvoNexus program, and

23 Suavei was terminated from the program.

24    57.    DeJoy's departure came at a very crucial time for Suavei to raise money from

25 additional investors and secure major enterprise trials and accounts. Suavei was forced to

26 forfeit the remainder of its 24-month program with EvoNexus, greatly decreasing its ability

27 to secure funding and robbing it of the opportunities afforded by belonging to a well-

28 connected incubator program like EvoNexus.

58.    Next, Defendant Infante revealed on the Call that – ***contrary to representations made on the Suavei Deck – the Suavei Product was not in fact containerized, but was still in a monolithic architecture***.

59.    Infante confirmed that the Suavei Product was not a containerized microservices architecture, as they represented in the Suavei Deck almost a year prior when Defendants were recruiting investors to fund Suavei. When a product has containerized microservices architecture, it is capable of efficient and automatic scaling on large enterprises, which can be hundreds of thousands of devices. Defendants, however, confirmed that the Suavei Product was not – and currently is not – containerized, but instead only has a monolithic architecture, which means that it is not capable of efficient and automated scaling, if any at all, on a large enterprise level. This selling point was the main draw when in the Slide Deck that was presented to investors in April 2019, as well as the July Press Release.

## **Defendants' Fraudulent Concealment is Uncovered**

60.    Next, Defendant Infante revealed that he had not been working full-time at Suavei for at least the past six (6) months, but had instead obtained full-time employment at F5 Networks, ***a Suavei competitor.*** Infante worked for F5 even though he was a board member, the CTO, CFO, interim CEO, and responsible for the intellectual property, technical strategy, and technical vision of Suavei.

61.    Plaintiffs allege on information and belief that Infante's employment agreement with F5 Networks would require him to assign any intellectual property developed by Infante to F5 Networks. Therefore, any intellectual property developed by Infante for Suavei may be owned by F5 Networks. Infante also revealed that the Defendants had allowed patent applications filed in January 2018 on behalf of Suavei to lapse.

62.    During the Call, Plaintiffs also uncovered that Defendant Wong, the only other board member for Suavei, was actually employed at FireEye, Inc., a competing cybersecurity company.

63.    Finally, Plaintiffs uncovered the truth that Individual Defendants Wong and

Infante were married at least as early as April 2019, the time of the representations made in the Suavei Deck.

64.    Defendants did not disclose the marriage or conflicting employment to the Plaintiffs in April 2019 or at any time prior to the Plaintiffs' investment in Suavei.

65.    The employment status and marriage relationship of Individual Defendants Wong and Infante create conflicting loyalties to competing cybersecurity firms and a duty of loyalty to each, instead of to Suavei. Accordingly, two competitors, F5 Networks and FireEye, have representation on the Suavei Board of Directors in direct conflict to the Plaintiffs' interest.

66.    After Defendants' fraudulent concealments were revealed, Plaintiffs discovered that all the director and officer positions on the Suavei board, along with their responsibilities, were concentrated within one married couple – each of whom with a duty of loyalty to their own full-time, competing employer and each other's own full-time, competing employer.

### Summary

67.    In sum, Defendants intentionally misrepresented in July 2018 and April 2019 that the capability of the Suavei Product had been designed, tested, and deployed. In fact, as Defendant Infante revealed in February 2020, the product had not been tested and was not ready to be deployed as a containerized microservices architecture.

68.    Plaintiffs, relying on Defendants' misrepresentations and unaware of material information regarding the Individual Defendants' employment statuses and marriage relationship, invested a total of $755,000 in Suavei.

### FIRST CLAIM FOR RELIEF
### (Fraudulent Inducement)
### As to All Defendants

69.    Plaintiffs repeat, reallege, and incorporate by reference the preceding allegations stated in paragraphs 1 through 68 as though set forth fully herein.

70.    In July 2018, via the July Press Release, Defendants, and each of them,

induced Plaintiffs to enter into the Note Agreement by making material misrepresentations and false assurances to Plaintiffs, including, without limitation, the representation that the Suavei Product consisted of a fully scalable architecture.

71.    In April 2019, via the Slide Deck, Defendants, and each of them, induced Plaintiffs to enter into the Note Agreement by making material misrepresentations and false assurances to Plaintiffs, including, without limitation, the representation that the Suavei Product consisted of a working containerized microservices architecture.

72.    Defendants made the material misrepresentations in order to entice Plaintiffs into executing the Note Agreement.

73.    Defendants' misrepresentations and assurances were designed to entice Plaintiffs, to their significant detriment and expense, to enter into the Note Agreement with Defendant Suavei.

74.    Moreover, Defendants, at all times, knew that Plaintiffs were heavily relying on the fraudulent misrepresentations in executing the Note Agreement.

75.    At the time Defendants made the foregoing material representations to Plaintiffs, the representations and promises were false, and, in addition, Defendants knew that all the representations were false when made.

76.    Plaintiffs acted in justifiable reliance upon Defendants' material misrepresentations, promises and assurances as, at the time Defendants made the representations, Plaintiffs did not know of the falsity of the representations and, in addition, could not, in the exercise of reasonable diligence, have discovered the truth.

77.    If Plaintiffs knew the truth, they would not have entered into the Note Agreement.

78.    As a direct and proximate result of Plaintiffs' justifiable reliance upon Defendants' fraudulent misrepresentations, Plaintiffs will suffer irreparable and substantial harm if the Note Agreement is not rescinded and the $755,000 consideration paid by Plaintiffs, with interest thereon at the legal rate from the transfer of Plaintiffs' funds to Defendants, is not restored to Plaintiffs, in that Plaintiffs are without the use of the funds

and profits which could have been earned on the investing of the funds.

## SECOND CLAIM FOR RELIEF
### (Fraudulent Concealment)
### As to All Defendants

79.     Plaintiffs repeat, reallege, and incorporate by reference the preceding allegations in paragraph 1 through 78 as though set forth fully herein.

80.     Defendants fraudulently concealed, or intentionally omitted, the fact that Individual Defendants Infante and Wong were married at the time Plaintiffs entered into the Note Agreement.

81.     Individual Defendants were under a duty to disclose their outside employment and marriage relationship status to Plaintiffs because these facts resulted in a direct conflict of interest possessed by the only two members of Suavei's board of directors.

82.     Defendants' concealment and omissions of material facts concerning, inter alia, their marriage and employment were made purposefully, willfully, wantonly, or recklessly to mislead Plaintiffs into executing the Note Agreement.

83.     Defendants' concealment and omissions of material facts concerning, inter alia, their marriage was made purposefully, willfully, wantonly, or recklessly to mislead Plaintiff into executing the Note Agreement for Defendant's financial gain and without regard for Plaintiffs' investments.

84.     Defendants knew that Plaintiffs had no way to determine the truth behind Defendants' concealment and omissions and that these include material omissions of facts surrounding the inherent conflict of both board members being married or employed by a competitor, as alleged herein.

85.     If Plaintiffs had known that Defendants Infante and Wong were married or employed by a competitor, Plaintiffs would not have entered into the respective Note Agreement.

86.     Plaintiffs reasonably relied on facts revealed which fraudulently and purposefully did not include facts that were concealed and omitted by Defendants.

### THIRD CLAIM FOR RELIEF
### (Breach of Fiduciary Duty)
### As to Individual Defendants Infante and Wong

87.     Plaintiffs repeats, realleges, and incorporates by reference the preceding allegations in paragraphs 1 through 86 as though set forth fully herein.

88.     As officers and board members of Suavei, Individual Defendants Infante and Wong owe fiduciary duties to their investors, including Plaintiffs, who invested $755,000 in Suavei via the Note Agreement.

89.     Defendants have engaged in a variety of self-dealing and corporate governance violations, including without limitation: (i) Defendants Infante and Wong both work full-time for competitors and did not disclose this fact to investors; (ii) Defendants allowed patent applications to lapse without disclosure to investors; (iii) as the only board members, Defendants Infante and Wong are married to each other and did not disclose this information to investors; (iv) Defendant Infante was developing intellectual property for Suavei while working full-time for F5 Networks, a competitor; and (v) Defendants made numerous material misrepresentations regarding the capabilities of their product to convince Plaintiffs to invest in Suavei.

90.     Defendants' breaches of their fiduciary duties have damaged Plaintiffs in an amount to be determined at trial.

### FOURTH CLAIM FOR RELIEF
### (Breach of Duty of Loyalty)
### As to Defendants Infante and Wong

91.     Plaintiffs repeat, reallege, and incorporates by reference the preceding allegations in paragraphs 1 through 90 as though set forth fully herein.

92.     As officers and board members of Suavei, Defendants owe fiduciary duties to Plaintiffs, who invested $755,000 in Suavei via the Note Agreement.

93.     Defendants have engaged in a variety of self-dealing and corporate governance violations, including without limitation: (i) Defendants Infante and Wong both

work full-time for competitors and did not disclose this fact to investors; (ii) Defendants allowed patent applications to lapse without disclosure to investors; (iii) as the only board members, Defendants Infante and Wong are married to each other and did not disclose this information to investors; (iv) Defendant Infante was developing intellectual property for Suavei while working full-time for F5 Networks, a competitor; and (v) Defendants made numerous material misrepresentations regarding the capabilities of their product to convince Plaintiffs to invest in Suavei.

94.    Defendants' breaches of their duty of loyalty have damaged Plaintiffs in an amount to be determined at trial.

### FIFTH CLAIM FOR RELIEF
**(Negligent Misrepresentation)**
**As to All Defendants**

95.    Plaintiffs repeat, reallege, and incorporate by reference the preceding allegations in paragraphs 1 through 94 as though set forth fully herein.

96.    Defendants owed Plaintiffs a duty of care, and Defendants were negligent in making representations to Plaintiffs in the Suavei Deck in April 2019, in an attempt to secure funding for Suavei.

97.    Based on Defendants' negligent misrepresentations, Plaintiffs have suffered significant and extensive damages and financial injury.

98.    Plaintiffs' reliance on Defendants' representations was a substantial factor in causing their harm.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

(a)    That all Defendants are jointly and severally liable;

(b)    For an Order rescinding the Note Agreement under the First Claim for Relief;

(c)    For compensatory damages according to proof;

(d)    For punitive damages according to proof based on Defendants' fraudulent conduct and breaches of fiduciary duty and duty of loyalty owed to Plaintiffs;

1    (e)    For pre-judgment interest at the legal rate on all sums awarded;

2    (f)    For an award of Plaintiffs' attorneys' fees and all costs of suit incurred herein;

3    and

4    (g)    For an award to Plaintiffs of such further relief at law or in equity as the Court

5    deems just and proper.

6                          **<u>DEMAND FOR JURY TRIAL</u>**

7              Plaintiffs respectfully demand a trial by jury in this action.

8

9                                    Respectfully submitted,

10    Dated: May 7, 2020              **LEJEUNE LAW, P.C.**

11

12                              By:    /s/Cody R. LeJeune
                                       _____
13                                     Cody R. LeJeune
                                       2801 Camino Del Rio South, Suite 200A
14                                     San Diego, California 92108
                                       Telephone: (985) 713-4964
15

16                                     **DRACUP & PATTERSON, INC.**
                                       Jeffrey A. Dracup
17                                     270 N. El Camino Real, Suite 510
                                       Encinitas, California 92024-2874
18                                     Telephone: (949) 309-1535
19

20                                     *Attorneys for Plaintiff,*
                                       JADE LIN, an individual; JAY LI, an
21                                     individual; MINH HONG, an individual; et
22                                     al.

23

24

25

26

27

28

                                        16