1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JADE LIN; JAY LI; MINH HONG; et al.,

Plaintiffs,

v.

SUAVEI, INC., a Delaware Corporation; AFONSO INFANTE; ALLISON WONG; Does 1-10, inclusive,

Defendants.

Case No.:  3:20-cv-0862-L-AHG

**ORDER**
**(1) GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [ECF NO. 33]; and**

**(2) DENYING MOTION TO STRIKE**

Pending before this Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 31].  The Court decides the matter on the papers submitted and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons stated below, the Court **GRANTS in part and DENIES in part** Defendants' Motion.

I.   **BACKGROUND**

This case stems from Plaintiffs' investment of $755,000 in an electronic data security technology developed by Defendant Suavei. (Second Amended Complaint "SAC" at ¶1). Defendant Suavei is described as an internet security company, founded in 2016. (SAC at ¶ 31).  Suavei is a Delaware corporation with its principal place of business in Las Vegas, Nevada.  (SAC ¶ 23). Defendants Infante and Wong are the

cofounders and the only board members of Suavei. (SAC at ¶¶ 21, 22). Infante and Wong are residents of Nevada, and Plaintiffs are residents of California, New Hampshire, New York, and Texas. (SAC at ¶¶ 9-20).

The security device in question is described as a self-configuring threat management solution for wirelessly connected devices (the "Technology"). (SAC at ¶31). The Technology purportedly includes SaaS-based architecture that uses machine learning algorithms to automate device identification and ongoing scans in corporate, industrial, and remote environments. (SAC at ¶ 32). Suavei advertises that the Technology rapidly assesses, finds and mitigates vulnerabilities in Critical Network Infrastructure, including capabilities that protect IoT ("Internet of Things") Cybersecurity Market, and the broader Vulnerability Management Market. (SAC at ¶¶ 33, 34).

On July 10, 2018, Defendants issued a press release touting the Technology, stating it is "a fast, easy to use, intuitive interface that provides actionable insights and a scalable architecture that will fit any topology." (SAC at ¶¶ 45, 47). In April 2019, Defendants made an oral presentation to Plaintiffs regarding the Technology in an effort to secure funding for Suavei. (SAC at ¶36). Defendants utilized a slide deck ("Suavei Deck") in the presentation titled "Protecting the IoT with Intelligent Cybersecurity Threat Management," which represented that the Technology included containerized microservice architecture that was designed, tested and ready to be deployed. (Suavei Deck at 7; SAC at ¶ 41). A product with containerized microservices architecture can scale to any number of client devices in an automated manner. (SAC at ¶ 44). A product that is "scalable" is able to grow and work on a number of different platforms. (*Id*.) These features increased the marketability of the Technology and were relied upon by the investor Plaintiffs. (SAC ¶ 46).

In April 2019, Defendant Infante made a presentation of the Technology via videoconference during a Tech Coast Angel meeting. (SAC ¶ 48). After that successful presentation, Infante pitched the Technology to EvoNexus, a start-up incubator, in La Jolla, California in May 2019. (SAC ¶ 48). At the EvoNexus presentation, Suavei CEO

Frank DeJoy relied on slides with similar content to the Suavei Deck used at the April 2019 meeting.  (SAC at ¶ 50).  In July 2019, Infante attended a meeting of high-profile institutional investors where he presented the Suavei Technology via a similar slide deck. (SAC at ¶ 52).

According to Plaintiffs, they relied on the information contained in the Suavei Deck, and the representations by Suavei that the Technology was user ready, when deciding to make investments in the company.  (SAC at ¶ 54).  However, on February 25, 2020, Infante held a conference call with Plaintiffs Li and Lin,  and an EvoNexus intern, named Ryan Rios, in attendance.  (SAC at ¶ 56).  During the call, Infante, on Suavei's behalf, disclosed that the Technology was not a containerized microservices architecture as previously stated, but was instead still in a monolithic architecture stage, incapable of efficient and automatic scaling to hundreds of thousands of devices.  (SAC at ¶¶ 62, 63).

On May 7, 2020, Plaintiffs filed a Complaint against Infante, Wong, and Suavei. (See Complaint [ECF No. 1].)  The Court dismissed the Complaint *sua sponte* with leave to amend for lack of subject matter jurisdiction on May 8, 2020.  [ECF No. 3.]  On May 11, 2020, Plaintiffs filed a First Amended Complaint. [ECF No. 4.] On June 29, 2020, Plaintiffs filed a request to file a Second Amended Complaint, which the Court granted on October 8, 2020.  [ECF Nos. 14, 30.] On October 9, 2020, Plaintiffs filed a Second Amended Complaint which alleges causes of action against all Defendants for (1) fraudulent inducement; (2) fraudulent concealment; (3) breach of fiduciary duty; (4) breach of duty of loyalty, and (4) negligent misrepresentation.  (See *Id*.)

Defendants now move to dismiss, arguing lack of personal, general and specific jurisdiction.  (See Motion to Dismiss ("MTD") [ECF No. 33-1].)  Defendants further contend that the claims of breach of fiduciary duty and duty of loyalty should be dismissed, and they move to strike allegations related to the renewal of DeJoy's CEO contract and Suavei's decision not to participate in EvoNexus incubator.  Plaintiffs oppose.  (See Oppo. [ECF No. 34].)

## II.   PERSONAL JURISDICTION

Where a defendant moves to dismiss for lack of personal jurisdiction, it "is the plaintiff's burden to establish the court's personal jurisdiction over a defendant."  *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001)(abrogated on other grounds) (*citing Cubbage v. Merchent*, 744 F.2d 665, 667 (9th Cir. 1984), cert. denied 470 U.S. 1005 (1985)).  To withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(2), the plaintiff need only demonstrate facts that if true, would support jurisdiction over the defendant.  *Id.* Although the plaintiff cannot "simply rest on the bare allegations of the complaint," uncontroverted allegations contained in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

A district court has personal jurisdiction over a defendant only if a statute authorizes jurisdiction and the assertion of jurisdiction does not offend due process. *Unocal*, 248 F.3d at 922.  "Where . . . there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc., v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006); *see also* Fed. R. Civ. P. 4(k)(1)(a).  Because California's long-arm statute is coextensive with federal due-process requirements, the jurisdictional analyses under state and federal law are the same.  *Yahoo!, Inc.*, 433 F.3d at 1205; Cal. Civ. Proc. Code § 410.10.

Absent traditional bases for personal jurisdiction (i.e. physical presence, domicile, and consent), the Due Process Clause requires that a nonresident defendant have certain minimum contacts with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  Depending upon the level of contacts with the forum state, personal jurisdiction can be "general" or "specific".  *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

As a primary matter, Plaintiffs claim that Defendants waived jurisdictional challenges because the motion to dismiss includes a request to dismiss Plaintiff's claim

for breach of fiduciary duty.  (Oppo. at 11).  Defendants argue in response that under Rule 12(b) they were required to bring the motion to dismiss for failure to state a claim in the same motion requesting dismissal. (Reply at 1).  The Court agrees. Defendants did not waive the jurisdictional arguments by moving to dismiss the breach of fiduciary duty claim in the same motion under Rule 12(b). Fed.R.Civ.P. 12(b).

Next, Defendant Infante concedes that this Court retains personal jurisdiction over him, but argues that the Court cannot exercise personal jurisdiction over Defendant Wong because (1) she was not properly served and (2) Wong did not avail herself of the privileges and protections of California by presenting at any meeting or soliciting any investments.  (Reply at 2-4).  Wong states in her declaration that she "was not involved in preparing any presentation for [the April 30, 2019] meeting" with Plaintiffs, and that the Slide Deck was "prepared entirely by Mr. DeJoy."  (Wong Declaration at ¶ 10).  She further claims that she "did not attend the Tech Coast Angels meeting in April 2019 via Zoom or in-person…[and] did not prepare or review the slides presented at that meeting." (*Id*. at ¶12). Similarly, she asserts that she "did not attend the July 2019 EvoNexus meeting held in San Diego. California…[and] did not prepare or review the slides presented at that meeting."  (*Id*. at ¶13). Wong admits she drafted Suavei's July 2018 press release, which included "San Francisco" in the release, but she states that it was disseminated on a website called www.prweb.com which did not specifically target California, but the internet at large.  (*Id*. at 5).  Finally, Defendants argue that although Plaintiffs argue that the Court has jurisdiction over Wong because she claims the California homeowner's exemption, that is irrelevant to the specific jurisdiction analysis, and it is an attempt to establish personal jurisdiction over Wong based on general jurisdiction, or where she is domiciled, which would destroy complete diversity if it was established.  (*Id*. at 5-6).

Plaintiffs respond that this Court has personal jurisdiction over Defendant Wong because she "reviewed presentation materials and presented to the group [Tech Coast Angel and EvoNexus] in California remotely."  (Oppo at 14).  In addition, Plaintiffs

5

claim Wong expressly aimed conduct at California when she (along with Infante) drafted the 2018 press release that contained misrepresentations about the user readiness of the Technology.  (*Id.*) Plaintiffs further assert Wong directed conduct at California by contributing the technological expertise and information for the Suavei Slide Deck that was used to induce investors to contribute to Suavei.  (Oppo at 18).  Specifically, Plaintiff Minh Hong stated in her affidavit that "Defendants Wong and Infante, as directors of Suavei, were charged with overseeing all presentation material" and that Frank DeJoy did not have a technical background, therefore, "[t]he language and technical information contained in the Suavei slides could only come from Wong or Infante." (Hong Declaration ¶¶ 5, 6).  According to Hong, the presentation Infante made at the EvoNexus mirrored Wong's messaging about the Technology which was seen in the "Suavei Demo" and the July 2018 press release.  (*Id.* at ¶ 7).  Finally, Plaintiffs claim that Wong is subject to personal jurisdiction in California because she continues to elect the California Homeowners Exemption and accepted service of this action in Alameda, California.  (*Id.* at 16).

### A.     **Specific Jurisdiction**

Specific jurisdiction exists where: (1) the defendant purposefully availed herself of the privilege of conducting activities in the forum or purposely directs her activities at the forum; (2) the claim arises out of the defendant's forum related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is reasonable. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000) (*citing Cybershell, Inc. v. Cybershell, Inc.*, 130 F.3d 414, 417 (9th Cir. 1997)). Plaintiff bears the burden of satisfying the first two prongs of the test. *Schwarzenegger*, 374 F.3d at 802.  If plaintiff succeeds in satisfying *both* prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. *Id.*  "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.*

The phrase "purposeful availment" includes both purposeful availment, which is most often used in contract suits, and purposeful direction, which is most often used in tort causes of action such as the present claims. *Schwarzenegger*, 674 F.3d at 802.   "A showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Id*. at 803.  Purposeful direction is evaluated under the three-part "effects" test originating with *Calder v. Jones*, 465 U.S. 783 (1984).  *Id*.  Under *Calder,* the "test requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Foods Co., Inc., v. Watts,* 303 F.3d 1104, 1111 (9th Cir. 2002).

The parties make conflicting representations in their affidavits concerning the extent of Wong's contributions to the Suavei Deck and attendance at the meetings, however, conflicts between the parties contained in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger,* 374 F.3d at 800.  Accordingly, Plaintiffs have made a *prima facie* showing that Wong acted with intention when she made representations via the press release and as a contributor to the technological information in the Suavei Slide Deck that was used in the Tech Coast Angels and EvoNexus presentations under *Calder*. *See Dole Food*, 303 F.3d at 1111.  However, Plaintiffs have not established that Wong "expressly aimed" her conduct at California because Plaintiffs have not shown that she knew the press release and Suavei Deck would be used to solicit funding from investors in California.  Nothing suggests that Wong reached out directly to investors in California in any way.  *Id*. at 1112. Because Plaintiffs fail to show Hong meets the second factor of the *Calder* test, they have failed to carry their burden of showing purposeful availment.[1]

---

[1] It also appears service of process was inadequate as to Wong because she was not with Infante when he was served in California. Instead, Wong's summons states it was left with Infante, and there is no

The Court therefore lacks personal jurisdiction over Defendant Wong. See *Schwarzenegger*, 374 F.3d at 801-2 (Plaintiff must satisfy the first two prongs of the test before the burden shifts to the Defendant).

For the foregoing reasons, Defendants' motion is granted as to Defendant Wong, and denied as to Defendant Infante.

## III.   BREACH OF FIDUCIARY DUTY

In the Second Amended Complaint, Plaintiffs allege that Defendants breach their fiduciary duty and duty of loyalty to Plaintiff Minh Hong, who was a consultant for Suavei, by failing to disclose the fact that the Technology was not ready for the market, and allowing her to proceed with representations that the Technology was user-ready. (SAC at 15-16).

The law of a corporation's state of incorporation governs liabilities of directors to the corporation and its shareholders under the "internal affairs" doctrine, including claims for breach of fiduciary duty. *Shaffer v. Heitner*, 433 U.S. 186, 215 n.44 (1977), *see also* Cal.Corp. Code 2116; *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1527 (9th Cir. 1985), *superseded on other grounds by statute as recognized in Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1156 (9th Cir. 1988). "The 'internal affairs' doctrine is a conflict of laws principle that recognizes that only one state should have the power to regulate matters peculiar to the relationship among the corporation, its officers and directors, and its shareholders, 'because otherwise a corporation could be faced with conflicting demands.'" *In re Sagent Technology, Inc. Derivative Litigation*, 278 F.Supp.2d 1079, 1090 (N.D.Cal. 2003) citing *Edgar v. MITE Corp.*, 457 US. 624, 645-46 (1982).

---

evidence that the process server made any attempt to personally serve Wong because there is no sworn affidavit from the process server to that effect. However, the Court does not rule on this issue in light of the finding that it does not retain personal jurisdiction over Wong.

Defendant argues that the claims for breach of fiduciary duty and the duty of loyalty should be dismissed because under controlling Delaware law, Infante and Wong do not owe Plaintiff Hong those duties.  (Motion at 16). Specifically, Hong was hired by Suavei as a consultant and her consulting agreement provided the option to buy common stock in the company, but Hong did not exercise her option to buy stock in Suavei, and the directors Infante and Wong did not approve any stock option.  As a result, Defendants argue Hong never became a stockholder to whom the directors owed a fiduciary duty. (Reply at 8-9).

In response, Plaintiffs claim that Hong became a stockholder under the Advisor Agreement in August 2019 due to her work for Suavei.  (Oppo. at 21).  As a stockholder, Plaintiffs claim that Wong and Infante owed a fiduciary duty to Hong, and were required to disclose that the Technology did not perform as represented.  (*Id*. at 22).

Defendant Suavei is incorporated in the state of Delaware, therefore the Court applies the laws of Delaware.  In that state, a corporate director owes the corporation and its stockholders two fiduciary duties, (1) the duty of care and (2) the duty of loyalty.  *In re Orchard Enterprises, Inc. Stockholder Litig*., 88 A.3d 1, 32 (Del.Ch. 2014)("Directors of a Delaware corporation owe two fiduciary duties—care and loyalty.")

In Hong's Consulting Agreement, her compensation was described on the signature page as an "option to purchase Common Stock" which would be authorized as follows:

> The Company will seek written approval or have a meeting of the Board of Directors to authorize the Advisor compensation and deliver definitive stock purchase or option agreements regarding the stock compensation within 30 days from the date of this Agreement. If the Company fails to provide the foregoing documentation within such 30-day period, then Advisor shall have the right to contact directors of the Company.

(Oppo. Ex A. at 1, 3)

1
2
3
4
5
6
7
8
9
10
11
12
13

Plaintiffs do not assert that Hong received the Board approval required to acquire stock options, nor that she exercised her options and bought common stock prior to the termination of her consulting contract in December of 2019. As a result, Plaintiffs have not demonstrated that Hong became a stockholder entitled to the fiduciary duties of care and loyalty. Although Plaintiffs argue that the existence of the Agreement triggered the fiduciary duties of Suavei and its board directors Infante and Wong, the terms of the Consulting Agreement indicate that more was required for Hong to acquire common stock shares that would activate fiduciary duties. *See In re Nine Systems Corp. Shareholders Litigation*, 2013 WL 771897 (Del.Ch. Feb. 28, 2013)("A claim for breach of fiduciary duty "'must be based on an actual, existing fiduciary relationship between the plaintiff and the defendants at the time of the alleged breach.'") For the foregoing reasons, Plaintiff's claims for breach of fiduciary duty and duty of loyalty as to Hong are dismissed without prejudice and with leave to amend.

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.     MOTION TO STRIKE**

The Court has discretion to determine whether to strike a matter pursuant to Federal Rules of Civil Procedure 12(f).  See *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000).  Under Rule 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed.R.Civ.P. 12(f).  "Motions to strike, however, are disfavored in the absence of prejudice.... [A] motion to strike is a severe measure and it is generally viewed with disfavor [and is] not normally granted unless prejudice would result to the movant from the denial of the motion." *Wailua Associates v. Aetna Cas. & Sur. Co*., 183 F.R.D. 550, 555 (D.Haw. 1998)(citations and quotation marks omitted).

Defendants claim that the assertions in paragraphs 58 and 59 of the Second Amended Complaint are derivative because they affect all shareholders, not just these Plaintiffs, and therefore they should be stricken.  (Mot. at 18-19).  To the extent Plaintiffs' claims rely on these paragraphs, Defendants contend the claims should be dismissed with prejudice.  (*Id*. at 19).

Plaintiffs counter that the claims in the Second Amended Complaint do not rely on the allegations contained in paragraphs 58 and 59, and the wrongdoing alleged therein directly harms Plaintiffs as investors in Suavei.  (Oppo. at 23).

The paragraphs in question concern the content of the February 25, 2020, phone call between Infante and investors Lin and Li when Plaintiffs allege that Suavei revealed the fraud perpetrated upon them. Paragraph 58 states:

> For instance, Defendants revealed that Suavei did not renew former CEO Frank DeJoy's contract. DeJoy came to Suavei with a proven track record of success, which included launching a global artificial intelligence startup and growing the first AT&T wireless data network to $1 billion. In addition, DeJoy was involved with successful companies such as the Teleport Communications Group, General Dynamics, Dycom Industries, Quanta Services and Spectrum Effect. Thus, in addition to losing a successful CEO, Infante was now serving as both the acting CEO, CFO, CTO, President and represented half of the Board of Directors.

(SAC ¶ 58).

Plaintiffs allege in paragraph 59:

Upon DeJoy's departure as Suavei's CEO, Infante made the decision that Suavei would no longer participate in the EvoNexus startup incubator program, which helps startups in numerous ways, including but not limited to, two (2) years of free prime real estate in La Jolla, California, intellectual property support, fundraising support, and connects startups to its network of investors that include Franklin Templeton and Royal Bank of Canada. In early, 2019, DeJoy helped Suavei secure a spot in the EvoNexus startup incubator program for a 24-month term.

(SAC ¶ 59)

In determining whether a claim is direct or derivative, a court looks to the law of the state of incorporation, which is Delaware, as noted above. *Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000). Under Delaware law, determining whether a stockholder's claim is derivative or direct turns on the following questions: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" *Tooley v. Donaldson, Lufkin & Jenrette*, Inc, 845 A.2d 1031, 1033 (Del. 2004). Defendants claim that in order to make this determination, the Court must determine whether a plaintiff suffered "special injury" or a harm that was not suffered by all stockholders generally, citing *In re Tri-Star Pictures, Inc. Litig*., 634 A.2d 319,330 (Del. 1993). (MTD at 19). However, the concept of "special injury" has been disapproved by the Delaware courts as unhelpful to the determination regarding direct and derivative actions. *See Tooley*, 845 A.2d at 1035. Instead, courts are directed to the two *Tooley* factors in making this determination.

The assertions made in these paragraphs impacted not only Suavei, but the individual investors. For instance, DeJoy had a proven track record of success at prior companies which investors were told when he presented the information about the Technology.  Suavei's failure to renew CEO Frank DeJoy's contract was likely to impact the ability of the company to achieve the success DeJoy's prior endeavors achieved, particularly in light of the fact that his departure left Infante as the acting CEO, CFO, CTO, President and half of the Board of Directors.  Similarly, the loss of DeJoy meant that Suavei would not continue to participate in the EvoNexus incubator, another key component upon which Plaintiffs' allegedly relied when investing.  If the claims were derivative, recovery would go only to the corporation, but in this case, individual investors are entitled to bring this action for "injuries affecting his or her legal rights as a stockholder." *Tooley*, 845 A.2d at 1036. Because the claims are not derivative, paragraphs 58 and 59 should not be stricken.

For these reasons, the Court denies Defendants motion to strike.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

3:20-cv-0862-L-AHG

## V.   CONCLUSION AND ORDER

For the foregoing reasons: the Court **GRANTS** Defendants Motion to Dismiss for lack of personal jurisdiction as to Defendant Wong.  The Complaint is hereby **DISMISSED** as to this defendant.

The Court Dismisses Plaintiffs claim for breach of fiduciary duty and breach of the duty of loyalty without prejudice and with leave to amend.

The Court **DENIES** Defendants Motion to Strike Paragraphs 58 and 59.

**IT IS SO ORDERED**

Dated:  August 31, 2021

Hon. M. James Lorenz
United States District Judge

3:20-cv-0862-L-AHG