UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JADE LIN, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>v.<br><br>SUAVEI, INC., *et al.*,<br><br>　　　　　　　　　　Defendants.<br><br>SUAVEI, INC.,<br>　Third-Party Plaintiff/Counter Defendant,<br><br>v.<br><br>FRANK DEJOY,<br>　Third-Party Defendant/Counter Claimant. | Case No.: 3:20-cv-862-L-AHG<br><br>**ORDER RESOLVING JOINT MOTION FOR RESOLUTION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 58]** |

Before the Court is the Joint Motion for Resolution of Discovery Dispute filed by Plaintiffs and Defendants Suavei, Inc. and Afonso Infante ("Defendants"). ECF No. 58.

**I.　BACKGROUND**

The parties to the Joint Motion seek court intervention in a discovery dispute regarding certain third-party document subpoenas that Plaintiffs served on TD Ameritrade, JP Morgan Chase, Bank of America, E*Trade Financial Holdings, and Formula Funding,

which command the banks to produce documents related to Defendants' accounts at each bank. *See* ECF Nos. 58-2 – 58-6 (copies of the third-party subpoenas at issue).

After holding a discovery conference on the dispute, and recognizing that the parties were at an impasse, the Court set a briefing schedule for the parties to file a joint motion to resolve the discovery dispute, which they did on October 15, 2021. For purposes of resolving the Joint Motion, the Court will treat it as a motion to quash the third-party subpoenas filed by Defendants pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii) (requiring a court, on timely motion, to quash or modify a subpoena that requires disclosure of "privileged or other protected matter, if no exception or waiver applies").

## II.     LEGAL STANDARD

The Federal Rules of Civil Procedure generally allow for broad discovery in civil actions. Rule 26 allows discovery of any "nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The question of relevancy "should be construed 'liberally and with common sense' and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995) (quoting *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992)). *See also Valenzuela v. City of Calexico*, No. 14-CV-481-BAS-PCL, 2015 WL 926149, at *2 (S.D. Cal. Mar. 4, 2015) ("Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case.") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Regardless of its broad nature, however, relevance is not without "ultimate and necessary boundaries." *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017). Information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery

in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.'" *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted). The fundamental principle of amended Rule 26(b)(1) is "that lawyers must size and shape their discovery requests to the requisites of a case." *Id.* Both discovery and Rule 26 are intended to provide parties with "efficient access to what is needed to prove a claim or defense, but eliminate unnecessary or wasteful discovery." *Id.*

Rule 45 governs subpoenas seeking discovery from non-parties. Under that rule, a party may serve a subpoena commanding a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control[.]" Fed. R. Civ. P. 45(a)(1)(C). Subsection (d)(3) of the Rule governs motions to quash or modify subpoenas. Relevant here, the Court **must** quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). Additionally, the scope of discovery that may be sought pursuant to a Rule 45 subpoena remains subject to Rule 26(b)(1)'s limitation requiring information to be nonprivileged, relevant, and proportional to the needs of the case to be discoverable. *See* Fed. R. Civ. P. 26(b)(1); *Dale Evans Parkway 2012, LLC v. Nat'l Fire & Marine Ins. Co.*, No. ED-CV-15-979-JGB-SPX, 2016 WL 7486606, at *3 (C.D. Cal. Oct. 27, 2016).

Ultimately, the Court is vested with "broad discretion" to permit or deny discovery. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). *See also Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery.").

### III.   DISCUSSION

On September 13, 2021, Plaintiffs served identical subpoenas on non-party financial institutions TD Ameritrade, JPMorgan Chase Bank, Bank of America, and E*Trade

Financial Holdings, LLC, seeking the financial records of Defendants Afonso Infante and/or Suavei, Inc. Each of these subpoenas reads as follows:

> Produce all documents, including but not limited to bank statements, withdrawals, deposits, transfers, loan applications, and loan agreements, whether hard copy or electronic data, from January 2019 to the present, related to the account bearing account number [XXXXX][1] or any other account being attached to your customer Afonso Infante or Suavei, Inc.

*See* ECF No. 58-2 at 4; ECF No. 58-3 at 4; ECF No. 58-4 at 4; and ECF No. 58-5 at 4.

The same day, Plaintiffs served a different subpoena on non-party Formula Funding, which commanded the following:

> Produce all documents, including but not limited to bank statements, withdrawals, deposits, transfers, loan applications, and loan agreements, whether hard copy or electronic data, from January 2019 to the present, related to loan applicant Afonso Infante or Suavei, Inc.

*See* ECF No. 58-6 at 4.[2]

Defendants argue the subpoenas are "wildly overbroad," seeking "all documents that relate in any manner to the personal financial accounts and transactions of [Defendant] Infante, and regardless of any connection to any issues in this case." ECF No. 58 at 2-3. Thus, even if Plaintiffs are entitled to discovery into Defendant's Infante's finances, Defendants argue the subpoenas as written should be quashed because they seek irrelevant information and "Plaintiffs have not made any attempt to limit the scope of the requests to the information they claim they need to obtain." *Id.* Specifically, Defendants note that Plaintiffs' remaining causes of action[3] in the case are fraudulent inducement, fraudulent

---

[1] The Court has redacted the relevant account numbers here. Besides the account numbers at issue, the subpoenas Plaintiffs served on each institution were otherwise identical.

[2] Plaintiffs served amended versions of the same subpoena on Formula Funding on September 22 and October 6, 2021, but the documents sought are the same. *See* ECF No. 58-6 at 11, 18.

[3] The Court dismissed Plaintiffs' claims for breach of fiduciary duty and breach of duty of

concealment, and negligent misrepresentation, all of which are based on the same allegations that Defendants made material misrepresentations and omissions to solicit Plaintiffs' loans to Defendant Suavei, Inc. ("Suavei") through the Note Purchase Agreements they executed in 2019. *Id.* at 4 (citing Second Amended Complaint, ECF No. 31 ¶¶ 74-75, 84-85, 100). In other words, "[a]ll three causes of action allege Plaintiffs were injured because Defendants deceived Plaintiffs into loaning money to Suavei through the Note Agreements, and that the harm was complete when the Note Agreements were executed." ECF No. 58 at 4-5.

Therefore, Defendants argue that information regarding how Defendant Infante used Suavei funds is not relevant to Plaintiffs' claims, because Plaintiffs do not have a claim for breach of fiduciary duty against Infante asserting misuse of Suavei funds—nor could they bring such a claim, because they are creditors and not shareholders of Suavei. *Id.* at 6-7. Defendants characterize Plaintiffs' attempt to engage in such discovery as an improper attempt to add a misappropriation of funds claim to their case without amending their complaint, after the deadline for amendment of pleadings has passed. *Id.* at 5.

Second, Defendant Infante argues the subpoenas invade his right to financial privacy under California law.[4] The California Constitution guarantees the right to privacy in Article

---

loyalty in its Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. *See* ECF No. 54 at 8-10.

[4] Federal Rule of Evidence 501 provides that, in a civil case, "state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Because this is a federal action based on diversity jurisdiction, state law governs claims of privilege. *Id.*; *see also Star Ed., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 7 F.3d 856, 859 (9th Cir. 1993). Under California law, the right to privacy is treated as a claim of privilege in the discovery context. *Zurich Am. Ins. Co. v. Sealink Ins. Servs. Corp.*, No. CV 16-4301 R(JCX), 2018 WL 10561907, at *1 (C.D. Cal. Mar. 16, 2018) (citing *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 655 (Cal. 1994)). Thus, California law applies to the Court's assessment of Defendant Infante's invocation of his right to privacy to prevent disclosure of his personal financial records.

I, Section I. *See* Cal. Const. art. 1 § 1; *Zurich*, 2018 WL 10561907, at *1. This right to privacy extends to personal financial information. *Harris v. Superior Ct.*, 4 Cal. Rptr. 2d 564, 567 (Cal. Ct. App. 1992), *disapproved of on other grounds by Williams v. Superior Ct.*, 398 P.3d 69 (Cal. 2017) ("Personal financial information comes within the zone of privacy protected by article I, section 1 of the California Constitution."). *See also Park v. Webloyalty.com, Inc.*, No. 12-CV-1380-LAB (JMA), 2018 WL 2017925, at *5 (S.D. Cal. Apr. 30, 2018) (explaining that California extends a zone of privacy to prevent disclosure of personal financial information).

"California courts have treated the right to privacy as a privilege in the discovery context, and, as such, have determined it is a right subject to invasion depending upon the circumstances." *Zurich*, 2018 WL 10561907, at *1. Importantly, "[p]rivacy concerns are not absolute; they must be balanced against other important interests." *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 655 (Cal. 1994). *See also Brooks v. Motsenbocker Advanced Devs., Inc.*, Case No. 07-CV-773-BTM-NLS, 2008 WL 109061, at *4 (S.D. Cal. Jan. 8, 2008) ("The asserted privileges that protect financial and proprietary information are not absolute, but are subject to balancing the needs of the litigation with the sensitivity of the information and records sought.").

The burden is on the party asserting a privacy interest "to establish its extent and the seriousness of the prospective invasion," which the Court must then weigh against "the countervailing interests the opposing party identifies[.]" *Williams v. Superior Ct.*, 398 P.3d 69, 87 (Cal. 2017). Engaging in such a balancing test between asserted privacy interests and countervailing interests "is central to the privacy jurisprudence of both common and constitutional law," and invasion of an identified privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest. *Hill*, 865 P.2d at 655-56. "When evidence is particularly important to a claim or defense, a party's right to discovery of that evidence is more likely to outweigh competing privacy claims." *Park*, 2018 WL 2017925, at *5 (citing *Denari v. Superior Ct. (Kern County)*, 264 Cal. Rptr. 261, 268 (Cal. Ct. App. 1989)).

Factors that the Court should consider when balancing the right of litigants to discover relevant facts against the right of bank customers to maintain reasonable privacy include:

> the purpose of the information sought, the effect that disclosure will have on the parties and on the trial, the nature of the objections urged by the party resisting disclosure, and the ability of the court to make an alternative order which may grant partial disclosure, disclosure in another form, or disclosure only in the event that the party seeking the information undertakes certain specified burdens which appear just under the circumstances.

*Dale Evans Parkway*, 2016 WL 7486606, at *5 (quoting *Fortunato v. Superior Ct.*, 8 Cal. Rptr. 3d 82, 86 (Cal. Ct. App. 2003)).

Additionally, the presence of a protective order in the case may mitigate the harm of disclosure of personal financial records, and is a factor the Court may consider in balancing an asserted privacy interest against a competing interest. *Park*, 2018 WL 2017925, at *5; *Williams*, 398 P.3d at 89 n.10 (noting that "if the intrusion is limited and confidential information is carefully shielded from disclosure except to those who have a legitimate need to know, privacy concerns are assuaged") (international quotations and citation omitted).

Defendant Infante argues that the privacy interest at risk is significant, because the third-party banks served with the subpoenas are used by Infante "for his personal banking needs," and the subpoenas "seek all documents that relate in any manner to the personal financial accounts and transactions of Infante, and regardless of any connection to any issues in this case." ECF No. 58 at 2-3. Moreover, Defendant Infante asserts Plaintiffs do not need the requested discovery, because they have already received the financial records from Suavei's bank accounts. *Id.* at 2. Therefore, enforcement of the subpoenas would allow Plaintiffs to conduct an extensive examination into all of his personal financial transactions for the past three years, without any sufficient countervailing interest in the information sought. Pursuant to the relevant balancing test under California law, then, Defendants contend Plaintiffs have failed to show that their right to the information to

discover facts relevant to their claims outweighs Defendant Infante's right to financial privacy. *Id.* at 7.

Finally, Defendant Infante argues that even if his private banking records were relevant to Plaintiffs' claims, the subpoenas are overbroad because Plaintiffs claim to need the records to ascertain whether the money they loaned to Suavei was taken for Infante's personal use, but the subpoenas are not limited to seeking records regarding Suavei funds transferred to Infante's accounts. Indeed, the time period covered by the subpoena starts in January 2019, nearly six months before any of the Plaintiffs made loans to Suavei. *Id.* at 8.

In response, Plaintiffs explain that they "have received documents from third parties showing that Infante siphoned approximately $750,000 from Suavei seemingly for his own personal expenditures." *Id.* at 9. Plaintiffs include a chart showing approximately 30 money transfers, totaling $745,462.56, between May 20, 2019 and February 13, 2020 from the Suavei account to Infante's bank accounts at the financial institutions at issue. *Id.* at 10. Thus, Plaintiffs argue that Defendant Infante's bank records (including records pre-dating their loans) are relevant to their fraudulent concealment claims, because Plaintiffs would not have invested in Suavei had they known that Defendant Infante was using Suavei's funds for his own personal expenditures. *Id.* at 11. Plaintiffs contend that the bank records have "a tendency to make the existence of Plaintiffs' claim that Infante used the siphoned funds for his own personal benefit more probable or less probable than if Plaintiffs did not have the requested documents." *Id.* at 10-11.

The central problem with Plaintiffs' argument is that Plaintiffs make no such "claim that Infante used the siphoned funds for his own personal benefit" in their Second Amended Complaint ("SAC"). *See generally* ECF No. 31. As Defendants point out, there are no factual allegations in the operative complaint related to Defendant Infante's use of Suavei funds. Rather, the allegations in the SAC underlying Plaintiffs' claims of fraudulent inducement, fraudulent concealment, and negligent misrepresentation relate to misrepresentations about the nature of the Suavei product (i.e., that it was an existing product, that it had been designed, tested, and deployed, and that it was scalable and had a

working containerized microservices architecture), and concealment of the facts that Defendant Infante and former Defendant Wong were married to one another and were both employed full-time by competitors of Suavei. *See* ECF No. 31 ¶¶ 36-90, 99-102.

Nonetheless, relevance must be construed broadly to include any matter that bears on, or reasonably could lead to other matter that could bear on, any issue that may be in the case. *Valenzuela*, 2015 WL 926149, at *2. The Court cannot say that Defendant Infante's purported siphoning of Suavei funds for personal use "has no conceivable bearing on the case," particularly given that Plaintiffs' claims of fraudulent inducement and fraudulent concealment require them to show that Defendant Infante intended to deceive them. *See Soto*, 162 F.R.D. at 296; CACI 1900; CACI 1901; *West v. JPMorgan Chase Bank, N.A.*, 154 Cal. Rptr. 3d 285, 295 (Cal. Ct. App. 2013) (setting forth the elements of fraud); *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1131 (9th Cir. 2014) (setting forth the elements of fraudulent concealment). Thus, under the permissive and liberal standard of relevance that the Court must apply, evidence showing that Defendant Infante used Suavei funds primarily or exclusively for his personal benefit, and not for the benefit of Suavei, could bear on whether he intended to deceive Plaintiffs when soliciting their loans to the company. For that reason, the Court finds that records showing how Defendant Infante was using Suavei funds are relevant to Plaintiffs' claims.

Relevance is only the beginning of the inquiry, however. Although the information sought is relevant under the broad relevance standard, its relevance must be weighed against Defendant Infante's protected privacy interest. On this issue, the Court finds that Defendants prevail under the relevant balancing test, which requires the Court to weigh the seriousness of a prospective invasion into a party's privacy interest against the countervailing interests identified by the opposing party. *Williams*, 398 P.3d at 87.

Here, Defendant Infante has met his initial burden of showing that he possesses a legally protected privacy interest in his personal financial information, that he maintains a reasonable expectation of privacy in his bank records, and that the pending subpoenas threaten a serious invasion of the privacy interest. *See In re Facebook, Inc. Internet*

*Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Int'l Fed'n of Prof'l & Technical Eng'rs v. Superior Ct.*, 165 P.3d 488, 499 (Cal. 2007). First, as a matter of law, Defendant Infante has a legally protected privacy interest in his personal financial information. *Harris*, 4 Cal. Rptr. 2d at 567; *Park*, 2018 WL 2017925, at *5. *See also Tourgeman v. Collins Fin. Servs., Inc.*, No. 08-CV-01392 JLS NLS, 2009 WL 6527758, at *3 (S.D. Cal. Nov. 23, 2009) ("There can be little question that Plaintiff has a legally protected privacy interest in his private financial information."). It is also "established" under California law "that a bank customer has [] a reasonable expectation of privacy . . . when his bank records are subpoenaed." *Athearn v. State Bar*, 571 P.2d 628, 629 (Cal. 1977) (citing *Burrows v. Superior Ct.*, 529 P2d. 590 (Cal. 1974)). Third, the subpoenas threaten a serious invasion of Defendant Infante's privacy interest, by seeking **all** documents related to **all** of his personal bank accounts between January 2019 and the present. The seriousness of such an intrusion is not outweighed by the countervailing interest that Plaintiffs identify—namely, that they wish to obtain evidence that Defendant Infante transferred Suavei funds into his personal bank accounts, especially since Plaintiffs already have evidence from Suavei's account records to support that allegation. *See* ECF No. 58 at 10.

To argue the additional records are needed, Plaintiffs explain that Defendant Infante has not produced his bank records himself, but say they are entitled "to cross-check any statements that Infante might produce" against the records produced by his banks. *Id.* at 11. In support, Plaintiffs cite to *Altamirano-Santiago v. Better Produce, Inc.*, No. CV 19-3964 DDP (FFMx), 2020 WL2303086, at *1-2 (C.D. Cal. Feb. 20, 2020) (denying a motion to quash a third-party subpoena that the class plaintiffs served on a financial institution to obtain the defendants' bank records, and relying in part on the rationale that "the records will be helpful to cross-check Defendants' own records regarding payments made to (and received from) the class Plaintiffs.").

*Altamirano-Santiago* is distinguishable. As an initial matter, the court there did not apply the privacy privilege under California law, but rather applied the less protective federal standard. *Id.* at *1. Further, the court found the plaintiffs had "demonstrated that

the records sought are relevant to [their] claims" because the records "relate to payments made to (and received from) the class Plaintiffs" and "are relevant to the allegations that [certain] defendants are joint employers of Plaintiffs." *Id.* Most importantly, the court found the plaintiffs there had "no practical method of obtaining evidence of joint employment other than through these records." *Id.*

Not only have Plaintiffs in this case failed to establish more than minimal relevance of Defendant Infante's bank records to the claims in the SAC—which, again, makes no mention of Defendant Infante's misappropriation of Suavei funds for personal use—but Plaintiffs have also failed to show that they have no practical method of obtaining evidence of misappropriation in another way. As discussed, Plaintiffs include a chart in the motion showing that approximately $750,000 was transferred from Suavei's account to Infante's personal accounts. ECF No. 58 at 10. Therefore, the circumstances in this case lead to a different result under the relevant balancing test, because Plaintiffs have not shown that the invasion of Defendant Infante's privacy is "justified by a competing interest," such as discovery of evidence that is "particularly important to a claim" in the case. *See Hill*, 865 P.2d at 655-56; *Park*, 2018 WL 2017925, at *5.

The presence of a protective order in the case also does not tip the balance in Plaintiffs' favor. While it is true that protective orders can assuage privacy concerns, that principle is qualified by the caveat that the intrusion be "limited." *Williams*, 398 P.3d at 89 n.10. Here, Plaintiffs seek all records from all of Defendant Infante's personal bank accounts from January 2019 to the present, without limitation. Given the minimal importance of the records to the alleged facts underlying Plaintiffs' claims of fraud, the availability of evidence from other sources regarding how Defendant Infante used Suavei funds, and the extent of the proposed intrusion, the Court finds the balancing test weighs against enforcement of the subpoenas.

Under Rule 45, the Court must quash or modify any subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies[.]" Fed. R. Civ. P. 45(d)(3)(A)(iii). Two modifications are proposed by Plaintiffs in lieu of quashing

the subpoenas outright.

First, Plaintiffs offer "to amend the temporal limitation of the subpoenas." ECF No. 58 at 11. However, Plaintiffs do not specify what the new limitation would be, and the parties' positions on the appropriate temporal scope are directly at odds. Specifically, Plaintiffs loaned funds to Suavei between May 24 and November 29, 2019, and Defendants' identified objection to the time period of the subpoenas is that they "seek[] records of [Infante's] personal transactions as early as January 2019, <u>almost half a year before the first plaintiff even loaned funds to Suavei</u>." *Id.* at 8 (emphasis in original). Therefore, Defendants appear especially opposed to Plaintiffs' attempt to obtain bank records pre-dating the Notes. In contrast, Plaintiffs make clear that they believe Defendant "Infante's personal bank records – *especially those prior to Plaintiffs' execution of the Notes* – are relevant to Plaintiffs' fraudulent concealment claims." *Id.* at 11 (emphasis added). If Plaintiffs take the position that the records pre-dating their loans are "especially" relevant to their fraudulent concealment claims, while Defendants argue that records pre-dating the loans are especially irrelevant, Plaintiffs' vague concession does little to resolve the conflict. Moreover, it does not appear to the Court that the parties have met and conferred on this issue. For that reason alone, the issue of whether a hypothetical amendment to the subpoenas could cure the problems identified herein is premature.

Additionally, modifying the temporal scope of the subpoenas would not mitigate the proposed intrusion into Defendant Infante's personal financial transactions that have nothing to do with Suavei. The time period of the subpoenas is already limited to January 2019 to the present. Plaintiffs offer no explanation why they need information regarding all of Defendant Infante's financial transactions over the past three years, *regardless of whether those transactions involved Suavei funds*. Thus, the outcome of the Court's analysis under the balancing test here has more to do with the "seriousness of the prospective invasion" compared to the relatively unimportant and only minimally relevant countervailing interests identified by Plaintiffs, rather than with the time period of the subpoenas. *Williams*, 398 P.3d at 87.

The second modification proposed by Plaintiffs is that the court deny the motion to quash regarding the subpoena Plaintiffs served on Formula Funding "to the extent it relates to Suavei." ECF No. 58 at 9 n.7. In support, Plaintiffs explain they "have reason to believe that Suavei obtained, or at least applied for, a loan from Formula Funding." *Id.* However, Plaintiffs do not explain the relevance of Suavei's loan application to their claims, and it is their burden to so. *See Optimize Tech. Sols., LLC. v. Staples, Inc.*, No. 14–MC–80095-LHK (HRL), 2014 WL 1477651, at *2 (N.D. Cal. Apr. 14, 2014) ("The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings") (citation omitted); *see also EON Corp. IP Holdings, LLC v. T–Mobile USA, Inc.*, 2012 WL 1980361, at *1 (N.D. Cal. June 1, 2012) ("Although the party who moves to quash has the burden of persuasion under Rule 45(c)(3), the party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.") (citation omitted). Without more, the Court cannot modify the subpoena on these grounds.

### IV. CONCLUSION

Based on the foregoing, the Court resolves the parties' Joint Motion for Resolution of Discovery Dispute (ECF No. 58) by **GRANTING** Defendants' motion to quash the third-party document subpoenas that Plaintiffs served on TD Ameritrade, JP Morgan Chase, Bank of America, E*Trade Financial Holdings, and Formula Funding. *See* ECF Nos. 58-2 – 58-6.

**IT IS SO ORDERED.**

Dated: December 23, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge